# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

PHILLIP ELMORE,

                Petitioner,         :        Case No. 1:07-cv-776

  - vs -                              Chief Judge Edmund A. Sargus, Jr.
                                          Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,

                                              :
                Respondent.

## DECISION AND ORDER DENYING MOTION TO TRANSPORT

This capital habeas corpus case is before the Court on Petitioner's Motion to Transport (ECF No. 169). An unredacted version of this Motion was provided to the Court and Respondent's counsel in conjunction with Petitioner's Motion to File Document Under Seal (ECF No. 165). The Warden responded to the merits as well as the request to seal (ECF No. 166) and Petitioner filed a brief Reply (ECF No. 167). On the Court's Order (ECF No. 170), Petitioner has filed a Supplemental Brief in support (ECF No. 171).

The Motion to Transport is in support of an order from Douglas Scharre, M.D., who is a Professor of Clinical Neurology and Psychiatry at The Ohio State University. Dr. Scharre is "under contract with the Office of the Federal Public Defender to assist in evaluating Mr. Elmore's brain injury, as it relates to the constitutional claim that trial counsel ineffectively failed to conduct such neuroimaging as well as Respondent's argument that such claim is procedurally defaulted." (Supp. Brief, ECF No. 171, PageID 13064). Dr. Scharre's curriculum

1

vitae is attached to the Supplemental Brief (ECF No. 171-1, PageID 13075-129); as are his orders for the proposed testing (ECF No. 171-2, PageID 13130-33). Dr. Scharre is apparently being compensated directly by the Public Defender; his retention was not subject to prior approval by the Court as would have been the case if his counsel were appointed under 18 U.S.C. § 3599.

**Jurisdiction**

As authority for the requested order, Petitioner initially relied on *Nields v. Bradshaw*, Case No. 1:03-cv-019, 2010 U.S. Dist. LEXIS 8099 (S.D. Ohio Jan. 11, 2010) (Merz, Mag. J.). In its Order for Additional Briefing, the Court noted that its decision in "*Nields* has been expressly repudiated by the Sixth Circuit in *Baze v. Parker*, 632 F.3d 338, 344-45 (6th Cir. 2011)" and requested argument on this point. (ECF No. 170, PageID 13062). Petitioner distinguishes *Baze* on the ground that it and *Nields* both involved information gathering in support of state clemency proceedings, whereas the request here is pre-judgment and in support of claims made in this habeas case (Supp. Brief, ECF No. 171, PageID 13071)[1].

Baze had sought an order for unfettered access to certain prison personnel. The district court held it lacked jurisdiction to grant that relief under both 18 U.S.C. 3599(f) and the All Writs Act, 28 U.S.C. § 1651. *Baze v. Parker*, 711 F. Supp. 2d 774, 781 (E.D. Ky. 2010)

---

[1] As additional authority, Petitioner's counsel relies on three cases from the U.S. Dist. Court for the Western District of Tennessee where he asserts that "under nearly identical circumstances [he] has secured transport orders to a local university. . ." (Motion, ECF No. 169, PageID 13009. Copies of the results were attached. However, this Court could not consider the rationale relied upon by the judges in those cases because, as counsel reported, the orders to transport are sealed (Supp. Brief, ECF No. 171, PageID 13072).

(Thapar, J.). The Sixth Circuit affirmed, finding that the jurisdiction conferred by § 3599(f) did not imply that it was proper to use the All Writs Act to make appointments under § 3599(f) effective. *Baze*, 632 F.3d at 346.

The *Baze* Court properly reminds us that we have only the jurisdiction granted by Congress and expansion of that jurisdiction is not to be lightly inferred, especially when its exercise implicates federalism questions and particularly with criminal cases. The transport order sought here would require the Warden to move a death-sentenced inmate from prison to a hospital for testing and thus would be a more direct interference with state custody than allowing interviewers into a prison.

Nevertheless, the Court concludes it has jurisdiction to issue the order under the All Writs Act. We have undoubted subject matter jurisdiction under 28 U.S.C. § 2241 over Elmore's Petition for writ of habeas corpus *ad subjiciendum*. Ancillary to that jurisdiction, we have, for example, general subpoena power for documentary evidence. If we had a need for Elmore's testimony at an evidentiary hearing, we would issue a writ of habeas corpus *ad testificandum*. Before the decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011), this Court often held evidentiary hearings in capital habeas cases, issuing the writ *ad testificandum* to obtain a petitioner's attendance, and was never challenged in doing so.

The current request is analogous. It is not Elmore's testimonial evidence that is sought, but rather physical evidence in the form of scans of his brain, scans which cannot be obtained without bringing him to the place where the testing is to be conducted. Use of the writ *ad testificandum* as requested would be ancillary to the Court's undoubted jurisdiction to adjudicate the underlying Petition. The Court has jurisdiction to issue that ancillary writ; the question is whether it should do so for the purposes for which the writ is sought.

**The Evidence Sought**

Petitioner seeks to submit himself to brain scan imaging to obtain evidence "as it relates to the constitutional claim that trial counsel ineffectively failed to conduct such neuroimaging as well as Respondent's argument that such claim is procedurally defaulted." (ECF No. 171, PageID 13064). The relevant claim is Claim X.D[2] in Petitioner's Corrected Third Amended Petition for Writ of Habeas Corpus (the "Petition," ECF No. 143). That claim reads:

> **D. Failure to obtain a PET scan of Elmore's brain.**
>
> 286) It is a bedrock principle of capital jurisprudence that an accused in a capital case is entitled to the assistance of experts. *Ake v. Oklahoma*, 470 U.S. 68 (1985); *State v. Mason*, 82 Ohio St. 3d 144 (1998), syllabus; *State v. Jenkins*, 15 Ohio St. 3d 164 (1984), syl. para. 4; Ohio Rev. Code § 2929.024; C. P. Sup. R. 20 § IV(D).
>
> 287) Elmore's counsel failed to obtain the funds for, and secure the administration of, a positron emission tomography scan (PET scan) of Elmore's brain to adequately prepare the defense case at Elmore's trial. As a result, counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. 668; *Ake*, 470 U.S. 68, and Elmore was prejudiced.
>
> 288) At the penalty phase of Elmore's trial, defense counsel presented the testimony of Dr. Jeff Smalldon. Dr. Smalldon is a psychologist with a subspecialty in neuropsychology. (Trial Transcript, ECF No. 138-3, PageID 6680). Dr. Smalldon testified at length about his credentials and indicated that he was a board certified forensic psychologist. (*Id.*, PageID 6676-6684). The state stipulated to his qualifications as an expert. (*Id.*, PageID 6684). Dr. Smalldon testified that Elmore suffered a brain injury that caused him mild brain impairment. (*Id.*, PageID 6725-26, 6744). Dr. Smalldon also testified that mild brain injuries, such as Elmore's "can often result in clinically significant impairments." (*Id.*, PageID 6726). As a neuropsychologist, Dr. Smalldon is qualified to make such a determination. Such testimony was appropriate and is admissible to prove the mitigating factor of a mental defect

---

[2] Labeled "Ten D" in the Petition.

pursuant to O.R.C. § 2929.04 (B) (3) or (B) (7). Further, the state did not present expert testimony to refute Dr. Smalldon's findings as to Elmore's brain impairment.

289) However, on cross-examination the state assailed Dr. Smalldon for not being a "medical doctor" and being unqualified "to diagnose medical conditions" (Trial Transcript, ECF No. 138-3, PageID 6744); because "no laboratory tests were performed on Mr. Elmore" and because Dr. Smalldon did not "consult with a medical doctor" (*Id*., PageID 6745); because Dr. Smalldon is "not a medical doctor and you cannot diagnose brain injuries as a medical doctor, can you?" (*Id*., PageID 6752); that Dr. Smalldon did not obtain a CAT scan of Elmore's brain (*Id*.); the prosecutor questioned Dr. Smalldon why an MRI was not done and inquired, "But the fact is an MRI brain scan, they can do nuclear medicine scans of brains now, can't they?" (*Id*., PageID 6753); and finally the prosecutor questioned Dr. Smalldon "And EKGs, all that sort of thing, can, in some instances, reveal the presence of a brain injury?" to which Smalldon answered, "Yes."7 (*Id*.) In closing argument, the prosecutor told the jury regarding Dr. Smalldon, "Nonetheless, he goes on and gets his degree in psychology and, folks, he's not medical doctor. He's not able to diagnose a brain injury." (*Id*., PageID 6803).

290) The prosecutor's negative cross-examination questions amounted—in effect—to the prosecutor testifying about perceived deficiencies in Dr. Smalldon's evaluation protocol. None of Elmore's jurors had training or experience with neuropsychological procedures. (Post-Conviction Ex. O, State's juror questionnaires, ECF No. 139-13, PageID 10263-10391). The prosecutor's comments would have had an impact on the sentencing jury in terms of reducing or eliminating the weight and effect the jury would give to the mitigating factor of Elmore's brain impairment. Defense counsel could have and should have acted peremptorily to ensure that the prosecutor could not pursue such attacks on the credibility of their sole witness.

291) At the time of Elmore's trial, had his counsel acted reasonably, counsel would have obtained an order from the Court for funds for a PET scan of Elmore's brain. There are physical manifestations—scarring—to Elmore's face that illustrate that he suffered trauma to his head. (Post-Conviction Ex. PP, medical records, ECF No. 139-14, PageID 10569). PET scans are most useful for the assessment of traumatic brain injury and are regarded as a reliable, empirically valid measure of brain injury. PET scan procedures had long been accepted at the time of Elmore's capital

trial. For example, over 45 articles on functional brain imaging studies of head trauma were published from 1988 to 1998 alone. Traumatic brain injury can be visualized with PET imaging and is characterized by abnormalities such as decreased metabolism in the frontal or temporal lobes relative to other brain regions. Crossed cerebellar diaschsis is seen in many patients with focal cortical injuries. These abnormalities are correlated with neuropsychological deficits. Functional brain imaging studies are more sensitive for the detection of abnormalities than MRI or CT scan. (Post-Conviction Ex. QQ, Quantitative PET Findings treatise, ECF No. 139-14, PageID 10571). The use of a PET scan evaluation would have complemented Dr. Smalldon's neuropsychological findings and obviated the prosecutor's attacks. Further, Elmore could have undergone the PET scan procedure at the Ohio State University Medical Center in Columbus, Ohio, where a specific PET scan department is in operation. Given the close proximity of this facility to the Licking County Jail, the PET scan could have easily been accomplished.

292) Once again, defense counsel did not pursue a viable issue, choosing to rely on whether the expert in the case raised the issue or pointing the finger at each other as to whose responsibility it was to pursue it. (Federal Discovery Depositions, Crates Deposition, ECF No. 132-6, PageID 4762, 4812; Rigg Deposition, ECF No. 132-3, PageID 4620, 4631; Sanderson Deposition, ECF No. 132-2, PageID 4521, 4539; Smalldon Deposition, ECF No. 132-8, PageID 4840).

293) The right to effective assistance of counsel is violated when counsel's performance falls below an objective standard of reasonableness and the client is prejudiced by counsel's breach of duty. *Strickland*, 466 U.S. at 696. Only after a full investigation can counsel make an informed, tactical decision about which information would be helpful in a client's case. *Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995); *State v. Johnson*, 24 Ohio St.3d 87 (1986). The failure of Elmore's trial counsel to investigate, prepare and present evidence of Elmore's brain impairment through the use of a PET scan was unreasonable and prejudiced Elmore. Counsels' omissions violated Elmore's rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

(ECF No. 143, PageID 12230-35.) The murder of Pamela Annarino, of which Elmore was convicted, occurred on June 1, 2002. *Id*. at PageID 12111-12. Assuming *arguendo* that a PET scan completed before trial the next year would have shown whatever brain deficiencies Elmore

now claims would have mitigated the penalty, and further assuming that a PET scan completed now would show the same deficiencies, the PET scan ordered by Dr. Scharre would be relevant to claim Ten D.

On the other hand, the order for an MRI does not appear to be relevant to claim Ten D. The trial prosecutor cross-examined Dr. Jeffrey Smalldon about why an MRI was not done, but there is no averment in Claim Ten D that the failure to do so constituted ineffective assistance of trial counsel.

Elmore also wishes the obtain the evidence to "overcome defaults." Whatever evidence the proposed neuroimaging would create was obviously not previously available to Elmore. Petitioner asserts that "any evidence developed by Mr. Elmore now would overcome any alleged default of such evidence/claims in earlier state proceedings. Given his lack of funding in state court and the inadequacy of the state court post-conviction process, he has 'cause' for any failure to develop such facts earlier." (Motion, ECF No. 169, PageID 13008).

In the Supplemental Return of Writ, Respondent asserts Claim Ten D is procedurally defaulted (ECF No. 144, PageID 12400) and refers the Court to Elmore's Post-Conviction Claim 7. In denying that claim in post-conviction, the Fifth District Court of Appeals wrote:

> {¶ 99} **Seventh Claim for Relief**
>
> {¶ 100} In his Seventh Claim for Relief appellant contends that he was denied effective assistance of trial counsel because trial counsel failed to obtain the funds for, and secure the administration of a positron emission tomography scan (PET scan) of appellant's brain to assess the traumatic brain injury he suffered at the age of sixteen. We disagree.
>
> {¶ 101} Appellant argues that his expert Dr. Jeffrey Smalldon testified at trial concerning appellant's brain injury. (8T. at 1267-1268; 1286). Dr. Smalldon testified that a mild brain injury such as appellant's "can often result in clinically significant impairments". (Id. at 1268). However, appellant argues that on cross-examination

the state assailed Dr. Smalldon for not being a medical doctor and being unqualified to diagnose medical conditions. (Id. At 1286). The state argued that Dr. Smalldon did not consult with a medical doctor, did not obtain a CAT scan and EKG or an MRI. (Id. at 1294 -95). Appellant argues that this negative cross-examination would have been negated had trial counsel obtained the funds for the administration of a PET scan.

{¶102} The evidence submitted outside the trial court record consists of non-certified medical records of appellant's injury from October, 1983, articles concerning the usefulness of PET scans in detecting brain injuries and the juror questionnaires. (Exhibits O, PP, QQ). The evidence submitted, as previously noted in relation to appellant's Fifth Claim for Relief, supra, are not admissible for the truth of the matters contained therein. *Hallworth v. Republic Steel Corp.* supra, 153 Ohio St. 349, 354, 91 N.E.2d 690, 693.

{¶ 103} Assuming arguendo the articles are admissible they do nothing to advance appellant's claim. Appellant does not present evidence outside the record that was unavailable to him at the time of trial. "Under the doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding [,] except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial* [that] resulted in that judgment of conviction or on an appeal from that judgment." (Emphasis sic.) *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus.

{¶ 104} The testimony of Dr. Smalldon is part of the trial court record. The cross-examination and closing argument, to which the appellant objects, are also part of the trial court record. Accordingly, this argument can be raised in appellant's direct appeal to the Ohio Supreme Court.

{¶ 105} Appellant's Seventh Claim for Relief presents a matter that can fairly be determined without resort to evidence dehors the record. The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun,* 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C)
.

> **{¶ 106}** As appellant is able to raise and fully litigate this issue on direct appeal, this court concludes that the trial court did not err in finding that the issue was barred by *res judicata.*
>
> **{¶ 107}** Appellant's Seventh Claim for Relief is overruled.

*State v. Elmore*, 5th Dist. Licking No. 2005-CA-32, 2005-Ohio-5940 (Nov. 3, 2005).

This appears to be a straightforward application of Ohio criminal *res judicata* doctrine as initially set forth in *State v. Perry, supra*. The procedural default defense is not before the Court for adjudication at this point in time, but suffice it to say that the Sixth Circuit has repeatedly found Ohio's criminal *res judicata* doctrine to be an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994) (citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001) (Smith, J.).

The procedural default relied on by the Fifth District is thus Elmore's failure to present the PET scan omission on direct appeal. Petitioner has offered no explanation to this Court of how PET scan images taken now would overcome that procedural default.

Elmore asserts that "[d]uring his state post-conviction proceedings, because of his indigence, Mr. Elmore sought funding for a PET scan, but that funding was denied." (Supp. Brief, ECF No. 171, PageID 13065)[3]. This is claimed to excuse his failure to develop this evidence in the state courts. But if it was error for the state court to fail to fund the test, it does not appear Petitioner appealed that denial; the only place a PET scan is mentioned in the Fifth District's decision is in the Seventh Ground for Relief. Any error in the state trial court's failure to fund is procedurally defaulted by counsel's failure to appeal the denial.

In the Order for Additional Briefing, Petitioner was requested to supplement his Reply

---

[3] Petitioner gives no record reference for this request or the trial court's denial of it.

"with an explanation of why he believes *[Cullen v.] Pinholster* does not apply." (Order, ECF No. 170, PageID 13062). Petitioner begins (Supp. Brief, ECF No. 171, PageID 10366), by citing *Johnson v. Bobby*, 2018 U.S. Dist. LEXIS 44709 (S.D. Ohio Mar. 19, 2018), in which Chief Judge Sargus wrote

> [T]here are circumstances under which a federal habeas court's consideration of new evidence does not contravene *Pinholster*. Such circumstances include if the Court determines from the existing record that the state courts' decision was unreasonable under § 2254(d); if a claim was not adjudicated on the merits but is otherwise properly before the Court for habeas review; or if the Court is considering whether to excuse a procedural default.

*Id.* at *23. The Chief Judge went on to deny the discovery sought in that capital case because the discovery was not targeted at any of those situations. *Id.*

Petitioner also cites the undersigned's prior decision in this case that "*Pinholster* does not preclude a federal court from considering new evidence when determining whether a procedural default should be excused." (Supp. Brief, ECF No. 171, PageID 13066, citing Decision and Order, ECF No. 137, PageID 5008; *Caudill v. Conover*, 871 F. Supp. 2d 639, 649 (E.D. Ky. 2012). While the Court continues to believe that statement of the law is correct, it is still incumbent on a habeas petitioner to show that the evidence he wishes to admit to excuse a procedural default would be relevant to the proposed excuse. Petitioner has not demonstrated how the new PET scan would do that.

Petitioner argues that *Martinez v. Ryan*, 566 U.S. 1 (2012), "would allow consideration of new evidence, where Elmore's current claim was not fully or properly presented to the state courts during initial post-conviction proceedings." (Supp. Brief, ECF No. 171, PageID 13067). *Martinez* and *Trevino v. Thaler*, 569 U.S. 413 (2013), create an equitable exception to the procedural default doctrine as it applies to substantial claims of ineffective assistance of trial

counsel when a defendant's failure to present a claim in post-conviction is caused by post-conviction counsel's deficiencies in representation which rise to the level of ineffective assistance of trial counsel per the standard in *Strickland, supra*. The United States Court of Appeals for the Sixth Circuit has continually declined to decide if *Martinez* and *Trevino* apply to the Ohio system of litigating ineffective assistance of trial counsel claims. See, e.g., *Moore v. Mitchell,* 848 F.3d 774, 775 (6th Cir. 2017). But even if Martinez were found to apply in Ohio cases, it would not assist Elmore. The Fifth District found his claim of ineffective assistance of trial counsel to be barred not because of a failure of post-conviction counsel, but because of failure to raise the issue on direct appeal when it could have been. *Elmore*, 2005-Ohio-5940, at ¶ 106. *Martinez* does not apply to excuse default in presenting an ineffective assistance of appellate counsel claim. *Davila v. Davis*, 582 U.S. ___, 137 S. Ct. 2058(2017).

Petitioner argues that the new neuroimaging evidence could be presented to the state courts in a second petition for post-conviction relief under Ohio Revised Code § 2953.23, thus overcoming the *Pinholster* problem. He does not suggest how this would overcome his procedural default of the failure to fund neuroimaging claim by not raising it as an assignment of error on appeal from the post-conviction decision.

**Conclusion**

Based on the foregoing analysis, the Motion to Transport is DENIED.

March 6, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge