# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

PHILLIP ELMORE,

                    Petitioner,           :     Case No. 1:07-cv-776

     - vs -                            Chief Judge Edmund A. Sargus, Jr.
                                         Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,

                                   :
                   Respondent.

---

# DECISION AND ORDER ON MOTIONS TO AMEND AND STAY AND FOR EVIDENTIARY HEARING

---

This capital habeas corpus case is before the Court on Petitioner Phillip Elmore's Motion to Amend his habeas corpus petition (ECF No. 175); Motion for an Evidentiary Hearing (ECF No. 183); and Motion to Stay and Abate[1] Federal Habeas Corpus Proceedings Pending Disposition of Successive State Post-Conviction Petition ("Motion to Stay," ECF No. 187). Respondent is opposed (ECF Nos. 186, 196). Elmore, in turn, has filed reply memoranda in support (ECF Nos. 193, 194, 197). The Court heard oral argument on the motions on July 24, 2019

All three Motions are non-dispositive pretrial motions on which an assigned Magistrate Judge has authority to enter a decision in the first instance. Fed.R.Civ.P. 72(a); *Monroe v. Houk*, No. 2:07-cv-258, 2016 U.S. Dist. LEXIS 38999 (S.D. Ohio, Mar. 23, 2016)(Sargus, C.J.);

---

[1] Motions to this effect since *Rhines v. Weber*, 544 U.S. 269, 277-278 (2005), have typically been labeled "motion to stay and abey," presumably because most attorneys would rather use two parallel words instead of just one. "Abey" is a made-up word, a sort-of shortcut for "hold in abeyance." "Abate" is closer in meaning to "terminate." Compare the entries for "abate" and "abeyance" in BRYAN GARNER, DICTIONARY OF LEGAL USAGE (3rd ed.)

*McKnight v. Bobby*, 2017 U.S. Dist. LEXIS 63861 (S.D. Ohio Apr. 27, 2017)(Dlott, D.J.).

**The Motion to Amend**

Petitioner seeks to file a Fourth Amended Petition to:

1.     "[a]dd Claim XX, that he is intellectually disabled and exempt from execution under the Eighth Amendment pursuant to *Moore v. Texas* (*Moore II*), 586 U.S. ___, [139 S. Ct. 666] (per curiam), *Moore v. Texas* (*Moore I*), 581 U.S. ___, 137 S. Ct. 1039 (2017), and *Hall v. Florida*, 572 U.S. 701 (2014)."  (Motion to Amend, ECF No. 175, PageID 13185).

2.     "discussion of the intervening Supreme Court decision in *McCoy v. Louisiana*, 584 U.S. ___, [139 S. Ct. ___] (2018)." *Id.*

3.     "discussion of the ineffectiveness of trial counsel in failing to secure and present evidence to the trial court and jury that Mr. Elmore suffers intellectual disability." *Id.*

Motions to amend habeas corpus petition are governed by 28 U.S.C. § 2242 which incorporates Fed.R.Civ.P. 15.  The general standard for considering a motion to amend under Rule 15 was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182.     *See also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997) (citing *Foman* standard).

In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013)(Rose, J.); *William F. Shea, LLC v. Bonutti Reseach Inc.*, 2011 U.S. Dist. LEXIS 39794, *28 (S.D. Ohio March 31, 2011) (Frost, J.).

Likewise, a motion to amend may be denied if it is brought after undue delay or with dilatory motive. *Foman v. Davis*, 371 U.S. 178 (1962); *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990); *Bach v. Drerup*, 2012 U.S. Dist. LEXIS 35574, *1 (Ovington, M.J.); *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), cert denied, 517 U.S. 112 (1996)(amendment should be denied if it "is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."). In *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994), the court repeated and explicated the *Foman* factors, noting that "[d]elay by itself is not a sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted. *Id.* at 130, quoting *Head v. Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989). These considerations apply as well in capital habeas corpus cases. *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998), quoting *Brooks*.

The Supreme Court of the United States decided *Atkins v. Virginia,* 536 U.S. 304, on June

20, 2002, making it unconstitutional for a State to execute a person who is intellectually disabled[2]. That decision was handed down before Elmore was tried and almost six years before he filed his original Petition in this Court on May 1, 2008. The Court opened this case and appointed counsel in July 2007, so Elmore has been represented here for more than twelve years.

The usual concern with undue delay under Fed.R.Civ.P. 15 is late amendments that disrupt trial schedules and can cause the reopening of discovery[3]. More generally, late amendments prevent finality. The same is true with capital habeas corpus cases. Finality is a concern of the State regarding its judgment of conviction, but also for the Court, whose limited resources are burdened by continuing to litigate cases which should have been final years before.

Elmore's excuse for seeking to amend as late as he did is that he was appointed new counsel in August 2018. But the counsel he had before, Kathleen McGarry and William Lazarow, were already experienced capital litigators when they were appointed in 2007 and vigorously litigated this case during their tenure. Habeas petitioners should not get a fresh start on the undue delay clock on account of changing counsel, and the proposed amendment here has been unduly delayed.

In addition to undue delay, *Foman* requires us to consider whether Elmore has a dilatory motive. Every capital habeas petitioner has a strong motive to delay finality of his habeas case because the Supreme Court of Ohio does not set execution dates in these cases until the habeas

---

[2] The Supreme Court used the then-prevalent term "mentally retarded," but switched seamlessly to "intellectually disabled" in *Hall v. Florida*, 572 U.S. 701 (2014), holding the term "intellectual disability" now has the same legal meaning as the term "mental retardation" did in *Atkins*.

[3] The liberal amendment policy of Ruel 15 is constricted by the case management concerns embodied in Fed.R.Civ.P. 16.

> Once the scheduling order's deadline to amend the complaint passes, however, "a plaintiff must first show good cause under Rule 16(b) [of the Federal Rules of Civil Procedure] for failure earlier to seek leave to amend" and the district court must evaluate prejudice to the nonmoving party "before a court will [even] consider whether amendment is proper under Rule 15(a)."

*Commerce Benefits Group, Inc. v. McKesson Corp.*, 326 Fed. Appx. 369, 376 (6th Cir. 2009), quoting *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).

case is finally resolved[4].  The motive to delay execution is so obvious that petitioner's counsel rarely to attempt to rebut it when filing motions in these cases and Petitioner has not done so here. Thus both undue delay and dilatory motive cut against allowing the amendment.

The last *Foman* factor is futility:  could the amended pleading withstand a motion to dismiss?  That question requires evaluation of the merits of both the proposed pleading and any proffered affirmative defenses and some courts prefer not to reach the merits on a motion to amend. Petitioner urges the Court not to reach the merits on this motion to amend, relying on *Stuckey v. Online Resources Corp*., 2010 WL 11565402 (S.D. Ohio Nov. 1, 2010), and *Pritchett v. Gentry*, 2019 U.S. Dist. LEXIS 101556 (D. Nev. Jun. 17, 2019).

In *Stuckey,* Judge Holschuh overruled objections to an order of Magistrate Judge Terry Kemp which allowed an amendment "in the exercise of discretion to permit the claim to be tested before the District Judge by way of a motion to dismiss."  This decision reflects the pattern of practice at the Columbus location of Court, at least under Judge Holschuh, where the eventual motion to dismiss would not have been referred to the assigned magistrate judge for an initial recommendation.  In contrast, in habeas corpus cases referred to the undersigned, the pattern of practice for all District Judges has been to refer all pretrial matters for initial consideration by the undersigned, whether for decision under Fed.R.Civ.P. 72(a) or recommendation under Fed.R.Civ.P. 72(b).  In addition, Magistrate Judge Kemp had found no undue delay and no dilatory motive.

A practice of deferring merits consideration until after amendment also makes more case management sense when a proposed amendment must only meet a "notice pleading" requirement. Yet Rule 2 of the Rules Governing § 2254 Cases requires considerably more than notice pleading

---

[4] Elmore has no execution date although the Ohio Department of Rehabilitation and Corrections has execution dates scheduled into 2024.  https://drc.Ohio.gov/execution-schedule, visited July 17, 2019.

and in fact Petitioner has pleaded his claims very extensively: the proposed Fourth Amended Petition is 309 pages long (ECF No. 175-1). This is not uncommon in capital habeas corpus cases. In fact, the presently pending Third Amended Petition, filed by prior counsel, is 256 pages long (ECF No. 143).

In *Pritchett*, Judge Dorsey allowed amendment to add a claim under *McCoy* because (1) "[p]arties in other cases now are litigating the scope and retroactive application of *McCoy*" and (2) there had been no state court ruling on the State's claim of procedural default, leading the judge to enter a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), and *sua sponte* order a return to state court for exhaustion. Judge Dorsey particularly noted that Pritchett was not subject to the death penalty (he was serving a sentence of life without parole for murder) and had no dilatory motive. Like Judge Kemp and Judge Holschuh, she believed "[t]he viability of this claim is a question that the court should answer only after full briefing . . ."

In contrast, in this case, Petitioner has a strong dilatory motive, as noted above, and there has been extensive briefing on the merits of the proposed new claims and defenses. It is unclear what judicial economy benefit would be achieved by postponing the futility question.

**Is *Hall v. Florida* Applicable to this Habeas Corpus Case?**

In *Atkins v. Virginia, supra,* the Supreme Court recognized a new substantive Eighth Amendment right, the right not to be executed if one is intellectually disabled. That recognition occurred in 2002 and Ohio had adopted a definition of intellectual disability and a method for adjudicating *Atkins* claims to that effect as of the time of Elmore's trial in 2003. In *State v. Lott,* 97 Ohio St. 3d 303 (2002), applying *Atkins*, the Supreme Court of Ohio held an Ohio death row

inmate could file a new post-conviction petition raising the *Atkins* claim within 180 days of that decision, to wit, on June 9,2003. The burden was placed on the defendant to establish mental retardation by a preponderance of the evidence. The trial court was instructed to apply the clinical definitions of retardation approved in *Atkins*: (1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communications, self-care, and self-direction, and (3) onset before the age of 18. IQ tests were to be considered but were not to be determinative. *Lott* recognized a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70.

Thus *Atkins* was firmly in place when Elmore was tried in 2003, but no claim of intellectual disability was made or litigated at trial or on direct appeal. However, a claim of ineffective assistance of trial counsel for failure to obtain a "mental retardation" expert was raised in the original Petition (ECF No. 13, PageID 179-80).

Subject to two narrow exceptions, a case that is decided after a defendant's conviction and sentence become final may not provide the basis for federal habeas relief if it announces a new rule. *Graham v. Collins*, 506 U.S. 461 (1993); *Stringer v. Black,* 503 U.S. 222 (1992); *Teague v. Lane*, 489 U.S. 288 (1989). "Two exceptions to the *Teague* rule, however, permit the retroactive application of a new rule whenever: 1) the rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or otherwise prohibits imposition of a certain type of punishment for a class of defendants because of their status or offense; or 2) the rule announces a new "watershed" rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *In re Carl Green,* 144 F.3d 384, 386 (6th Cir. 1998), *citing Caspari v. Bohlen*, 510 U.S. at 396.

Elmore argues the rules announced in *Hall, Moore I*, and *Moore II* apply retroactively to

this case because collectively they define a class of defendants who, because they are intellectually disabled under the definition adopted in these cases, may not be executed. Although *Atkins* adopted a new rule – the intellectually disabled may not be executed – it did not define the class of people who are protected by that right as the Supreme Court recognized in *Hall* and *Bies*.

In *Hall v. Florida*, 572 U.S. 701 (2014), the Supreme Court invalidated the State of Florida's strict cutoff of an intelligence quotient ("IQ") score of 70 for purposes of an *Atkins* claim. Hall filed a post-*Atkins* application to have his death sentence set aside because of intellectual disability. Because he had a tested IQ score of 71, the Florida courts barred him from presenting other evidence of his disability. The United States Supreme Court reversed and held the Florida statute, as interpreted by the Florida Supreme Court, to be unconstitutional. Justice Kennedy noted that in *Atkins* the Court had said "the medical community defines intellectual disability according to three criteria: significantly subaverage intellectual functioning, deficits in adaptive functioning (the inability to learn basic skills and adjust behavior to changing circumstances), and onset of these deficits during the developmental period." 572 U.S. at 710.

In *Bies v. Bobby*, 556 U.S. 825 (2009), the Court recognized that it had not in *Atkins* provided "definitive procedural or substantive guides for determining when" a person who claims intellectual disability "falls within the protection of the Eighth Amendment." Justice Kennedy repeated what the *Atkins* court had said: "those persons who meet the "clinical definitions" of intellectual disability " by definition . . . have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others." 572 U.S. at 719-20, quoting *Atkins*, at 318. Justice Kennedy concluded "[t]his Court agrees with the medical experts that when a defendant's IQ test score falls within the test's acknowledged and inherent

margin of error [the Standard Error of Measurement], the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits." *Id.* at 723.

In *Moore v. Texas*, 137 S. Ct. 1039 (2017)("*Moore I*"), the Court reversed a holding of the Texas Court of Criminal Appeals that Moore's intellectual disability was to be evaluated in the first instance under factors that court had adopted in 1992 rather than under current medical guidelines. The Court found this conclusion "irreconcilable with *Hall*." *Id.* at 1049. In *Moore II* it held that the Texas Court of Criminal Appeals decision on remand is "inconsistent with our opinion in [*Moore I*]." 139 S. Ct. 666, 670 (2019).

The Magistrate Judge concludes that *Hall, Moore I*, and *Moore II* do not create a new substantive constitutional right which is retroactively applicable on collateral review. The substantive right in question was recognized in *Atkins*: intellectually disabled people may not be executed. *Hall* limits the procedures a State may use in determining intellectual disability: a State may not set an absolute cut-off of an IQ score above 70. *Moore I* further limits the procedures a State may use for that determination: it must assess intellectual disability in accordance with current medical standards. *Moore II* in effect applies *Moore I* to the record before the Texas Court of Criminal Appeals; it is properly seen as an enforcement of the mandate rule.

In *In Re Payne*, 772 Fed. App'x 534 (6th Cir. Feb. 8, 2018), the Sixth Circuit considered the possible retroactivity of *Hall* and *Moore I* and held

> Even if we assume, without deciding, that *Hall* and *Moore* announce new rules of constitutional law, Payne has not shown that these decisions apply retroactively. Federal courts have repeatedly concluded that *Hall* and *Moore* merely created new procedural requirements that do not amount to "watershed rules of criminal procedure." *See Williams v. Kelley*, 858 F.3d 464, 474 (8th Cir. 2017) (*Moore* not retroactive); *Goodwin v. Steele*, 814 F.3d 901, 904 (8th Cir. 2014) (*Hall* not retroactive); *Kilgore v. Sec'y, Fla. Dep't of*

> *Corr.*, 805 F.3d 1301, 1314 (11th Cir. 2015) (*Hall* not retroactive); *Lynch v. Hudson*, No. 2:07-CV-948, 2017 U.S. Dist. LEXIS 125725, 2017 WL 3404773, at *2-3 (S.D. Ohio Aug. 9, 2017) (*Moore* and *Hall* do not apply retroactively)[5]; *Smith v. Dunn*, No. 2:13-CV-00557-RDP, 2017 U.S. Dist. LEXIS 113862, 2017 WL 3116937, at *4-6 (N.D. Ala. July 21, 2017) (*Moore* and *Hall* do not apply retroactively); *Prieto v. Davis*, No. 3:13CV849-HEH, 2014 U.S. Dist. LEXIS 107504, 2014 WL 3867554, at *41-42 (E.D. Va. Aug. 5, 2014) (*Hall* not retroactive).

*Id.* at 538. Although *Payne* is unpublished, a prior unpublished Sixth Circuit opinion can "establish the law" governing a particular subject. *PBGC v. Alloytek*, 924 F.2d 620 (6th Cir. 1991). Elmore cites several state court decisions that have applied Hall and Moore retroactively. (See Motion, ECF No. 175, PageID 13195, citing *White v. Commonwealth*, 500 S.W.3d 208, 215 (Ky. 2016); *Walls v. State*, 213 So.3d 340, 346 (Fla. 2016); and *Ex Parte Cathey*, 2018 Tex. Crim. App. Unpub. Lexis 736 (Nov. 7, 2018).) None of these opinions provides any analysis of why, under *Teague*, these decisions should apply retroactively.

In a published decision in *Hill v. Anderson*, 881 F.3d 483 (6th Cir. 2018), the court applied *Moore I* retroactively, i.e., to evaluate an Ohio court's rejection of Hill's intellectual disability claim. However, *Hill* no longer stands as authority for that proposition because the Supreme Court has reversed that decision and remanded the case. *Shoop v. Hill,* 139 S. Ct. 504 (2019)(GVR per curiam).

Because *Hall*, *Moore I,* and *Moore II* do not recognize a new substantive right, they are not applicable on collateral review. For that reason, the proposed amendment to add Claim XX would be futile. And because of that futility as well as undue delay in bringing Claim XX and noting Elmore's dilatory motive, the Motion to Amend to add Claim XX is denied.

---

[5] This is a decision of the undersigned which remains pending before the assigned District Judge on objections.

**Does *McCoy v. Louisiana* Apply in Habeas Corpus?**

In *McCoy v. Louisiana*, 584 U.S. ___, 138 S. Ct. 1500 (2018), the Supreme Court held that admitting guilt in a criminal trial when client wants to oppose it, even when the evidence is overwhelming, is a structural error and violates a client's right to autonomy under the Sixth Amendment.

In Elmore's currently pending Corrected Third Amended Petition, Claim 6.C reads as follows:

### C. Improperly conceding guilt.

198) In opening statement, defense counsel told the jurors that when all the evidence had been presented, they would find "that the State has failed to prove the allegations, the elements and the offenses that they are claiming in this case." (Trial Transcript, ECF No. 138-2, PageID 6113). However in closing argument defense counsel totally reversed their position, conceding that Elmore was guilty of all the offenses with which he was charged except aggravated murder:

Phillip Elmore committed a burglary, he committed a kidnapping, he committed a robbery, he committed a theft of a motor vehicle, and he committed murder. He did not commit aggravated murder.

(Trial Transcript, ECF No. 138-3, PageID 6518).

199) Trial counsel Sanderson, who made both the opening and closing statements did not believe he needed to discuss "trial strategy" with the client. He admitted:

"I agree that it doesn't seem to make a lot of sense for me to say in the beginning – I haven't seen my opening statement. I don't recall what my opening statement was. I'll be candid and say I'm surprised that I would have said in opening statement they ain't going to prove nothing, because I sort of knew what this case was about from the beginning, but if that was a representation I made during

opening statement and then concluded the way I did, I would agree that that doesn't make a lot of sense."

(Federal Discovery Deposition, Sanderson Deposition, ECF No. 132-2, PageID 4530)

200) Needless to say, the prosecution wasted no time emphasizing defense counsel's concessions in its rebuttal argument:

> And, as [the prosecutor's co-counsel] indicated, the evidence in this case proves beyond a reasonable doubt that the defendant is guilty of kidnapping, just as his attorney told you. He is guilty of aggravated robbery, just as his attorney told you. He is guilty of everything he is charged with according to the attorney, except the aggravated murder. Oh, no, that's something less. We'll talk about that a little bit later. Certainly the crime committed against Pam Annarino was not less. It was, pure and simple, an aggravated murder.

(Trial Transcript, ECF No. 138-3, PageID 6519).

201) The prosecution further argued in rebuttal that defense counsel's concessions also proved three of the four specifications which made Elmore death eligible:

> Was the aggravated murder committed while the defendant was committing kidnapping, and was he the principal offender? He wasn't just the principal offender, folks, he was the only offender. Yes, how do you know it was? Because the defense attorneys told you that. Was it committed during an aggravated burglary? Yes. How do you know that? Because they admit that. Was the murder committed during an aggravated robbery? Yes. Because the defendant told you that. Those are the facts in this particular case.

(Trial Transcript, ECF No. 138-3, PageID 6531-6532). Needless to say, it took the jurors only a few hours (during which they also ate lunch) to render their verdicts finding Elmore guilty of all charges and death penalty specifications. (Id., PageID 6571-6583).

202) Defense counsel had previously moved for judgment of acquittal pursuant to Crim.R. 29 as to specification 1 of Count 1, specification 2 of Count 1 and as to Count 3 all dealing with kidnapping. (Trial Transcript, ECF 138-3, PageID 6460). The trial court denied the motion. (Id., PageID 6484). As set forth above,

defense counsel admitted during closing argument that Elmore committed a kidnapping. (Id., PageID 6518). During rebuttal, the prosecution capitalized on defense counsel's admission that Elmore was guilty of kidnapping. (Id., PageID 6531).

203) After the jury was instructed, defense counsel renewed the motion for judgment of acquittal. (Trial Transcript, ECF No. 138-3, PageID 6573). The trial court again overruled the renewed motion for judgment of acquittal. (Id., PageID 6574). Elmore contends that presenting inconsistent theories on outcome determinative matters is not the hallmark of an effective advocate. In fact, under Evid. R. 801(D)(2)(c) and (d), defense counsel's statement may be considered a representative admission. See e.g., *United States v. McClellan* (CA7 1989), 868 F.2d 210, 215; *United States v. Bentson* (CA9 1991), 947 F.2d 1353, 1356.

204) On the one hand defense counsel tried to convince the trial judge to acquit Elmore on the kidnapping charge and specifications, while at the same time, telling the jury that he was guilty of that charge and specifications. Defense counsel knew or should have known that they could not have it both ways. This constitutes deficient performance.

205) In *Florida v Nixon*, 543 U.S. 75 (2004), the Court held that while defense counsel is not obligated to gain express consent to a proposed strategy in which guilt is conceded, that counsel is obligated to explain such a strategy to the defendant. There is no indication that Elmore had any knowledge of this "strategy," if it can even be termed a strategy since defense counsel was inconsistent in implementation.

206) Elmore was prejudiced by this deficient performance in a number of ways. First, the trial court hearing these inconsistent arguments would have no doubt that its initial denial of the motion for acquittal was justified and that defense counsel was merely renewing the motion without a basis. Second, the prosecution latched onto defense counsel's admission in final argument and contended that it showed that the evidence presented by the prosecution was true. Thirdly, the prosecution also used defense counsel's admissions to prove three of the four death penalty specifications thereby ensuring that Elmore would be death eligible.

(ECF No. 143, PageID 12189-93.)

Elmore proposes to amend this Claim 6.C to read:

### C. Improperly conceding guilt without consent

198) In opening statement, defense counsel told the jurors that when all the evidence had been presented, they would find "that the State has failed to prove the allegations, the elements and the offenses that they are claiming in this case." (Trial Transcript, ECF No. 138-2, PageID 6113). However in closing argument defense counsel totally reversed their position, conceding that Elmore was guilty of all the offenses with which he was charged except aggravated murder:

> Phillip Elmore committed a burglary, he committed a kidnapping, he committed a robbery, he committed a theft of a motor vehicle, and he committed murder. He did not commit aggravated murder.

(Trial Transcript, ECF No. 138-3, PageID 6518).

199) Trial counsel Sanderson, who made both the opening and closing statements did not believe he needed to discuss "trial strategy" with the client. He admitted: "I agree that it doesn't seem to make a lot of sense for me to say in the beginning – I haven't seen my opening statement. I don't recall what my opening statement was. I'll be candid and say I'm surprised that I would have said in opening statement they ain't going to prove nothing, because I sort of knew what this case was about from the beginning, but if that was a representation I made during opening statement and then concluded the way I did, I would agree that that doesn't make a lot of sense." (Federal Discovery Deposition, Sanderson Deposition, ECF No. 132-2, PageID 4530)

200) Needless to say, the prosecution wasted no time emphasizing defense counsel's concessions in its rebuttal argument:

> And, as [the prosecutor's co-counsel] indicated, the evidence in this case proves beyond a reasonable doubt that the defendant is guilty of kidnapping, just as his attorney told you. He is guilty of aggravated robbery, just as his attorney told you. He is guilty of everything he is charged with according to the attorney, except the aggravated murder. Oh, no, that's something less. We'll talk about that a little bit later. Certainly the crime committed against Pam Annarino was not less. It was, pure and simple, an aggravated murder.

(Trial Transcript, ECF No. 138-3, PageID 6519).

201) The prosecution further argued in rebuttal that defense counsel's concessions also proved three of the four specifications which made Elmore death eligible:

> Was the aggravated murder committed while the defendant was committing kidnapping, and was he the principal offender? He wasn't just the principal offender, folks, he was the only offender. Yes, how do you know it was? Because the defense attorneys told
> you that.
>
> Was it committed during an aggravated burglary? Yes. How do you know that? Because they admit that.
>
> Was the murder committed during an aggravated robbery? Yes. Because the defendant told you that. Those are the facts in this particular case.

(Trial Transcript, ECF No. 138-3, PageID 6531-6532). Needless to say, it took the jurors only a few hours (during which they also ate lunch) to render their verdicts finding Elmore guilty of all charges and death penalty specifications. (*Id*., PageID 6571-6583).

202) Defense counsel had previously moved for judgment of acquittal pursuant to Crim.R. 29 as to specification 1 of Count 1, specification 2 of Count 1 and as to Count 3, all dealing with kidnapping. (Trial Transcript, ECF 138-3, PageID 6460). The trial court denied the motion. (*Id*., PageID 6484). As set forth above, defense counsel admitted during closing argument that Elmore committed a kidnapping. (*Id*., PageID 6518). During rebuttal, the prosecution capitalized on defense counsel's admission that Elmore was guilty of kidnapping. (*Id.,* PageID 6531).

203) After the jury was instructed, defense counsel renewed the motion for judgment of acquittal. (Trial Transcript, ECF No. 138-3, PageID 6573). The trial court again overruled the renewed motion for judgment of acquittal. (Id., PageID 6574). Elmore contends that presenting inconsistent theories on outcome determinative matters is not the hallmark of an effective advocate. In fact, under Evid. R. 801(D)(2)(c) and (d), defense counsel's statement may be considered a representative admission. See e.g., *United States v. McClellan* (CA7 1989), 868 F.2d 210, 215; *United States v. Bentson* (CA91991), 947 F.2d 1353, 1356.

204) On the one hand defense counsel tried to convince the trial judge to acquit Elmore on the kidnapping charge and specifications,

while at the same time, telling the jury that he was guilty of that charge and specifications. Defense counsel knew or should have known that they could not have it both ways. This constitutes deficient performance.

205) In *McCoy v. Louisiana,* 584 U.S. ___, 138 S.Ct. 1500 (2018), the Supreme Court held that trial counsel must discuss any possible concession of guilt and can only concede guilt if a defendant either agrees to such a concession or otherwise acquiesces. As the Court held in *McCoy*: "Counsel, in any case, must still develop a trial strategy and discuss it with her client, see Nixon, 543 U.S. at 178, explaining why, in her view, conceding guilt would be the best option." , 584 U.S. at ___, 138 S.Ct. at 1509. But if, after consultation, the defendant does not agree to concede his guilt as to charges made by the prosecution, "it [is] not open to [counsel] to override [the defendant's] objection." *Id. Florida v Nixon,* 543 U.S. 175 (2004), held that defense counsel is obligated to explain such a strategy to the defendant and may move forward with such a strategy only if the defendant consents or otherwise acquiesces. *Id.* at 178. Counsel, however, did not discuss his proposed actions and closing argument with Elmore. Counsel did not inform Elmore of counsel's proposed strategy of conceding guilt as to numerous charges and death penalty specifications. Elmore had no knowledge of counsel's "strategy" and did not consent.

206) Consequently, in this capital case, Elmore was denied his Sixth Amendment rights as recognized by *McCoy*. As *McCoy* has recently held, Elmore is thus entitled to relief as a matter of law, because this constitutional violation was a structural error, which entitles him to a new trial and certainly a new sentencing hearing, given the denial of his right to autonomy. *McCoy*, 584 U.S. at ___, 138 S.Ct. at 1511-1512 (where defendant is denied autonomy to choose concession of guilt, error is structural, and no prejudice need be shown under the Sixth Amendment). Further, Elmore establishes (should he be required to do so) that, in violation of the right to effective counsel under the Sixth Amendment, he was prejudiced by counsel's actions in a number of ways. First, the trial court hearing counsel's inconsistent arguments would have no doubt that its initial denial of the motion for acquittal was justified and that defense counsel was merely renewing the motion without a basis. Second, the prosecution latched onto defense counsel's admission in final argument and contended that it showed that the evidence presented by the prosecution was true. Thirdly, the prosecution also used defense counsel's admissions to prove three of the four death penalty specifications thereby ensuring that Elmore would be death eligible, and paved the way for the imposition of the death sentence.

> Under these circumstances, the death sentence was tainted and imposed because of counsel's denial of Elmore's right to autonomy and to effective counsel, in direct contravention of *McCoy* and the Sixth Amendment. Under the Sixth Amendment, Elmore is therefore entitled to a new trial and a new sentencing hearing free from the taint of the denial of his autonomy and right to present his defense with the assistance of counsel.

(ECF No. 175-1, PageID 13291-97.)

As can be seen by comparing the language, ¶¶ 198-204 in the proposed Fourth Amended Petition are identical to the same numbered paragraphs in the Corrected Third Amended Petition. However in proposed paragraphs 205 and 206, Elmore wishes to switch from a claim of ineffective assistance of trial counsel under *Florida v. Nixon,* 543 U.S. 75 (2004), to a claim of client autonomy under *McCoy v. Louisiana*, 584 U.S. ___, 138 S. Ct. 1500 (2018).

Elmore filed his Motion to Amend March 25, 2019, about ten months after *McCoy* was decided on May 14, 2018. This does not constitute undue delay. Elmore's dilatory motive noted above applies to this claim as well. But the crux of the matter is futility. Proposed ¶¶ 205 and 206 could not withstand a motion to dismiss because *McCoy* does not apply to this case.

First of all, the rule established in *McCoy* – a trial attorney may not admit guilt over his or her client's adamant refusal to allow the concession – was not clearly established at the time the Ohio courts decided Elmore's ineffective assistance of trial counsel claim, for purposes of evaluating any such decision under 28 U.S.C. § 2254(d)(1). On the other hand, if this is considered as a new claim not made in the state courts, *McCoy* did not establish a new substantive rule of constitutional law in the *Teague* sense, nor is its holding a "watershed" rule of criminal procedure.

Secondly, Elmore's reliance on the ruling that conceding guilt over client objection is a structural error does not make it retroactive, as he appears to assert. Structural error is not subject to harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). But that does not

make recognition of a new type of structural error to be retroactively applicable in habeas. Elmore

cites no case authority to the contrary and the Court is aware of none.

Therefore the Motion to Amend is denied insofar as it proposes to substitute new ¶¶ 205-

206 for the same numbered paragraphs in the Corrected Third Amended Petition.


**Ineffective Assistance of Trial Counsel Claims**


In the Corrected Third Amended Petition, Elmore alleges ineffective assistance of trial

counsel in eight sub-claims, A through H. In his instant Motion he proposes to amend sub-claims

D, G, and H, respectively claiming ineffective assistance of trial counsel in failure to obtain a PET

scan of Elmore's brain; failure to investigate, obtain, and utilize an intellectual disability expert;

and failure to investigate, obtain and utilize a substance abuse expert (ECF No. 143, PageID 12105-

06).

Having compared proposed amended sub-claims 10(D), 10(G), and 10(H) with the parallel

claims made in the Corrected Amended Third Petition, the Court finds the proposed changes

merely clarify the allegations made previously and therefore raise no futility or statute of

limitations issues. Accordingly, Petitioner's Motion to Amend to change the pleading of sub-

claims 10(D), 10(G), and 10(H) is GRANTED.


**The Statute of Limitations**


Neither *Hall* nor *Moore I* was expressly made retroactive by the Supreme Court so as to

qualify Elmore claims under those cases for a restart of the statute of limitations under 28 U.S.C.

§ 2244(d)(1)(C). But even if they had been, Elmore's Motion to Amend would be untimely as to Claim XX. *Hall* was handed down May 27, 2014, so that claims based on *Hall* were required to be filed by May 27, 2015; the Motion to Amend was not filed until March 25, 2019, almost four years later. *Moore I* was decided March 28, 2017, so the Motion to Amend (assuming *Moore I* created a new right) was virtually a year late. The statute of limitations makes the Motion to Amend futile as to any claims under *Hall* or *Moore I* and the Motion to add those claims is denied on that basis as well.

While Elmore argues that the Motion to Amend is timely bedause it was filed within one year of Moore II, no reasonable reading of that decision sgguests its creates any new procedural, much less substantive, right.

**Motion to Stay**

District courts have authority to grant stays in habeas corpus cases to permit exhaustion of state court remedies in consideration of the AEDPA's preference for state court initial resolution of claims. However, in recognizing that authority, the Supreme Court held:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). . . .

On the other hand, it likely would be an abuse of discretion for a
district court to deny a stay and to dismiss a mixed petition if the
petitioner had good cause for his failure to exhaust, his unexhausted
claims are potentially meritorious, and there is no indication that the
petitioner engaged in intentionally dilatory litigation tactics.

*Rhines v. Weber*, 544 U.S. 269, 277-278 (2005). "Staying a federal habeas petition frustrates

AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of

federal proceedings. *Id*.

The decision on whether to hold habeas proceedings in abeyance so that a petitioner may

exhaust those claims in the state courts, is within this Court's sound discretion. *Rhines v. Weber*,

544 U.S. 269, 277-78 (2005); *Cowan v. Stovall*, 645 F.3d 815, 820-21 (6th Cir. 2011). The

petitioner must "[1)] show good cause for failing to present the claims before the state court in the

first instance, and 2) show that his unexhausted claims are not 'plainly meritless.'" *Wagner v.

Smith*, 581 F.3d 410, 419 (6th Cir. 2009), quoting *Rhines*, 544 U.S. at 277.

Because the Magistrate Judge has denied Elmore's Motion to Amend to add new claims,

the currently pending Petition is not "mixed" in the sense of including exhausted and unexhausted

claims and the Court has the authority to continue to adjudicate it. At the same time, Elmore has

filed a successive post-conviction petition in the Licking County Court of Common Pleas raising

the claims made here. If that court concludes it has jurisdiction to adjudicate those claims and

eventually grants Elmore relief on that basis, this habeas case will become moot. Even if that court

eventually denies relief but takes additional evidence, this Court may be able to consider that

evidence without breaching the rule in *Cullen v. Pinholster*, 563 U.S. 170 (2011). If no stay is

granted, Elmore can continue to litigate in this Court and obtain a District Judge conclusion as to

the correctness vel non of the Magistrate Judge's decision on amendment. Nothing about a failure

to stay these proceedings will prevent Elmore from litigating in the Ohio courts; the pendency of

this case in no way prevents them from proceeding. Accordingly, the Motion to Stay is DENIED without prejudice to Elmore's proceeding in the Licking County Court. By separate Order, the Magistrate Judge has required Petitioner to keep this Court currently apprised of proceedings in the state courts (ECF No. 205).

**Motion for Evidentiary Hearing**

As agreed during the oral argument on July 24, 2019, the Motion for Evidentiary Hearing is premature and is denied without prejudice on that basis.

July 30, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge