**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

PHILLIP ELMORE,

        Petitioner,    :    Case No. 1:07-cv-776

- vs -    District Judge Edmund A. Sargus, Jr.
    Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,

        :
        Respondent.

# SUPPLEMENTAL OPINION AND RECOMMENDATIONS

This capital habeas corpus case is before the Court on Petitioner Phillip Elmore's Appeal (ECF No. 212) from the Magistrate Judge's Decision and Order on Motions to Amend, Stay, and for Evidentiary Hearing ("Decision," ECF No. 207). The Warden has responded to the Appeal (ECF No. 214). Petitioner replied to that Response (ECF No. 218) and had also filed Notice of Supplemental Authorities (ECF No. 219). District Judge Sargus has recommitted the matter for reconsideration in light of the Appeal (ECF No. 213).

**The Motion *Sub Judice***

Elmore seeks to file a Fourth Amended Petition to

1.    [a]dd Claim XX, that he is intellectually disabled and exempt from execution under the Eighth Amendment pursuant to *Moore v. Texas* (*Moore II*), 586 U.S. ___, 139 S.Ct. 666 (2019)(*per curiam*), *Moore v. Texas* (*Moore I*), 581 U.S. ___, 137 S.Ct. 1039 (2017), and *Hall v. Florida,* 572 U.S. 701 (2014).

1

2. discussion of the intervening Supreme Court decision in *McCoy v. Louisiana,* 584 U.S. \_\_\_\_\_, 138 S.Ct. 1500 (2018). *Id*.

3. discussion of the ineffectiveness of trial counsel in failing to secure and present evidence to the trial court and jury that Mr. Elmore suffers intellectual disability. *Id*.

(Motion to Amend, ECF No. 175, PageID 13185.)

**The Magistrate Judge's Decision and Order**

Applying the general standard for motions to amend under Fed.R.Civ.P. 15, the Magistrate Judge found that the Supreme Court had held execution of the intellectually disabled substantively unconstitutional in *Atkins v. Virginia*, 536 U.S. 304 (2002), before Elmore was tried and almost six years before he filed his original Petition in this case. Because Elmore has been represented by experienced capital habeas counsel since the beginning of this case in 2007, the Magistrate Judge concluded Elmore had unduly delayed seeking to add Claim XX (Decision, ECF No. 207, PageID 14777). The Decision also found the amendment was barred by the statute of limitations. *Id.* at 14792.

The Magistrate Judge also found Elmore has a dilatory motive, which he shares with all capital habeas petitioners, and weighed that against him in the Rule 15 analysis.[1] *Id.* at PageID 14777-78.

Finally, the Magistrate Judge concluded the amendment would be futile because *Hall v. Florida*, 572 U.S. 701 (2014), *Moore I*, and *Moore II* do not recognize a new substantive

---

[1] All death row inmates have a motive to delay their executions, but as habeas petitioners they have an added motive for delay because, as a matter of practice, the Supreme Court of Ohio does not set execution dates until federal habeas proceedings are complete.

constitutional right, they are not applicable to cases pending on collateral review, per the rule in *Teague v. Lane*, 489 U.S. 288 (1989). Therefore the first branch of the Motion – to add Claim XX – was denied. *Id.* at PageID 14783.

In the second branch of the Motion, Elmore sought to shift his Claim 6.D from a claim of ineffective assistance of trial counsel under *Florida v. Nixon,* 543 U.S. 75 (2004), to a claim of client autonomy under *McCoy v. Louisiana*, 584 U.S. ___, 138 S.Ct. 1500 (2018). The Magistrate Judge concluded that *McCoy* is not retroactively applicable to cases on collateral review and therefore denied the Motion to substitute new language in ¶¶ 205-06 of the Third Amended Corrected Petition (ECF No. 143, PageID 12192-93).

The Decision permitted the proposed changes to sub-claims 10(D), 10(G) and 10(H) (ECF No. 207, PageID 14791). It also denied the Motion to Stay pending the outcome of state court proceedings and the Motion for Evidentiary Hearing as premature. *Id.* at PageID 14793-94.

**Elmore's Objections**

**Undue Delay**

Elmore objects to the Decision's finding of undue delay because, he says, the Warden did not oppose the Motion to Amend on that basis and therefore waived[2] the argument (ECF No. 212, PageID 14896, 14902-05). In adopting the general standard for considering motions to amend in *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court listed undue delay as a proper factor to

---
[2] "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). Respondent never expressly waived an undue delay argument. Petitioner seems to be claiming, instead, that the argument is forfeited.

3

be considered in deciding whether to grant an amendment. Elmore cites no authority for the proposition that a trial court may not consider all the *Foman* factors, regardless of how expansive a defendant's opposing arguments may be. While federal district courts are not tasked with generally enforcing claims or defenses not raised, they are charged to construe, administer, and employ the Civil Rules, including Rule 15, "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1

On the facts, Elmore does not dispute any of the time lapses cited in the Decision. Instead, his counsel object that "it is undisputed that undersigned counsel . . . raised the claim as soon as they could after appointment by this Court in 2018 [and] raised the claim promptly after counsel secured expert assistance in 2018." With respect, this is not the Federal Public Defender's case, it is Phillip Elmore's case. It did not become a new case, with all past occurrences becoming irrelevant, when the Federal Public Defender was appointed. The delay in raising this claim from 2007 to 2019, while he was represented by experienced capital defense counsel and had the opportunity to seek funding for experts is attributable to Elmore. The calculation of undue delay does not begin anew under Fed.R.Civ.P. 15 every time a petitioner acquires new counsel.

**Dilatory Motive**

Elmore objects to the Magistrate Judge's finding that he has a dilatory motive in moving to amend and stay ((Objections, ECF No. 212, PageID 14905-10).

First, he says, Respondent never opposed the Motion on that basis. This objection is unavailing for the same reason as with "undue delay": the Supreme Court in *Foman* listed it as a factor to be considered.

Second, Elmore objects that there is no record basis for a finding of dilatory motive, indeed, "the Court did not ask about dilatory motive during oral argument nor request additional briefing. . . ." Certainly there is no direct evidence that Elmore wants his execution delayed by more litigation: Elmore was not brought to court to testify on that question or be questioned about it. In this instance, as is so often the case in the law, motive must be inferred from circumstantial evidence. With the exception of the very rare case of "volunteers," no death row inmate ever wants his execution accelerated. A motive to desire delay may properly be inferred from the fact that Elmore is on death row. The second circumstantial fact that is relevant is that Elmore is in that class of Ohio death row inmates for whom no execution date has been set. As the Decision noted, the Supreme Court of Ohio has by practice not issued death warrants until habeas proceedings are complete. Allowing the amendment would certainly delay finality in this habeas corpus case, particularly if it were accompanied by a stay to allow the claim to be presented to the Ohio courts.[3] If a rational person in Elmore's position would have a motive to delay and if the effect of granting his Motion would be to create that delay, it is not inappropriate to impute that motive to him.

**Futility: Standard for Review**

*Foman* importantly asks if an amendment would be futile in the sense that it could not withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

Elmore argues a court "can deny a motion to amend on the grounds of futility only when a

---

[3] Ohio Common Pleas courts are busy. In one capital case in this Court, stayed for a return to state court, the petitioner's motion for leave to file a delayed motion for new trial has been pending without decision for almost six years. In another capital case in a different urban Common Pleas court, a stay to permit litigation of an *Atkins* claim remained pending nearly ten years.

5

proposed amendment is 'clearly futile' [or] 'plainly without merit'" (ECF No. 212, PageID 14896). In other words, he seems to be arguing that the *Foman* standard is not "futility," but very clear futility.

While there are cases that use the words "clearly futile" in very different contexts, the only capital case Elmore cites is Judge Watson's recent decision in *Dunlap v. Paskett,* 2019 U.S. Dist. LEXIS 46105 (S.D. Ohio Mar. 20, 2019). There the judge followed the unanimous opinion of other judges of this Court that a claim under *Hurst v. Florida*, 136 S.Ct. 616 (2016), was "plainly without merit." *Id.* at *6-16.[4] Judge Watson was merely applying the *Foman* futility standard and not distinguishing between a proposed amendment that was just futile and one that was "clearly futile."

Under *Foman,* the test for futility is whether the proposed amendment could withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6). See *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013) (Rose, J.); *William F. Shea, LLC v. Bonutti Research Inc.*, No. 2:10-cv-615, 2011

---

[4] Citing *Davis v. Bobby*, Case No. 2:10-cv-107, 2017 U.S. Dist. LEXIS 157948, 2017 WL 4277202 (S.D. Ohio Sep. 25, 2017) (Sargus, C.J.); *Lindsey v. Jenkins*, Case No. 1:03-cv-702, 2017 U.S. Dist. LEXIS 157946 (S.D. Ohio Sep. 25, 2017) (Sargus, C.J.) (ECF No. 147); *Myers v. Bagley*, Case No. 3:04-cv-174, 2017 U.S. Dist. LEXIS 205899 (S.D. Ohio Sep. 12, 2017) (Marbley, J.) (ECF No. 126); *Robb v. Ishee*, Case No. 2:02-cv-535, 2017 U.S. Dist. LEXIS 207446 (S.D. Ohio Sep. 12, 2017) (Marbley, J.) (ECF No. 213); *Twyford v. Bradshaw*, Case No. 2:03-cv-906, 2017 U.S. Dist. LEXIS 222270 (S.D. Ohio Sep. 12, 2017) (Marbley, J.) (ECF No. 90). *See also Gapen v. Robinson*, Case No. 3:08-cv-280, 2017 U.S. Dist. LEXIS 130755, 2017 WL 3524688 (S.D. Ohio Aug. 15, 2017) (Rice, J.); *Smith v. Pineda*, Case No. 1:12-cv-196, 2017 U.S. Dist. LEXIS 22082, 2017 WL 631410 (S.D. Ohio Feb. 16, 2017) (Merz, Mag. J.); *McKnight v. Bobby*, Case No. 2:09-cv-059, 2017 U.S. Dist. LEXIS 21946, 2017 WL 631411 (S.D. Ohio Feb. 15, 2017) (Merz, Mag. J.).

U.S. Dist. LEXIS 39794, *28 (S.D. Ohio March 31, 2011) (Frost, J.). While some judges may prefer to allow the amendment and then test the viability of the claim on a motion to dismiss, the *Foman* futility test invites consideration of merits before allowing amendment.

**Futility: Procedural Default**

Elmore objects that his claims are not futile on the basis of procedural default (Objections, ECF No. 212, PageID 14897). The Decision makes no recommendation on procedural default.

**Futility: Non-Retroactivity**

The principal holding of the Decision is that *Hall, Moore I,* and *Moore II* are not retroactively applicable to cases on collateral review because they do not create a new substantive right (ECF No. 207, PageID 14779-83, citing principally *Teague v. Lane*, 489 U.S. 288 (1989)).

Elmore objects that *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), changes the *Teague* analysis. In *Miller v. Alabama*, 567 U.S. 460 (2012), held categorically that the Eighth Amendment forbids a sentence of life imprisonment without parole for juvenile offenders. In *Montgomery* the Court held that *Miller* was required to be applied retroactively. As the Court recognized in *Montgomery*, *Miller* was like *Atkins*: it identified a class of people (those under eighteen at the time of their crime) who could never be punished in a certain way (by life without parole) just as the Court had previously identified the same class of people as categorically ineligible for the death sentence in *Roper v. Simmons*, 543 U.S. 551 (2005).

Elmore's argument is that *Hall* does the same kind of thing, identifying a class of people

who are ineligible for the death penalty. But Elmore describes that class of people as persons who "suffer 'significantly subaverage intellectual functioning, deficit in adaptive functioning (the inability to learn basic skills and adjust to changing circumstances), and onset of these deficits during the developmental period,' or before age eighteen." (Motion, ECF No. 175, PageID 13189, quoting *Hall*, 572 U.S. at 410.) That is the same class of people that *Atkins* found ineligible for the death penalty because that is the definition of mental retardation/intellectual disability the Court used in *Atkins*. What *Hall* did was to preclude the State of Florida from using an IQ score of 70 as an automatic disqualification for proving that a person is in the class of people for whom, on account of their intellectual disability, may not be executed if they commit murder.

Taken together, *Hall, Moore I*, and *Moore II* change significantly what must be proved to bring persons within the protection of *Atkins*. They are significant new law, but they make procedural instead of substantive changes.

Elmore argues that *Hall* and *Moore I* must be retroactive because they were before the Supreme Court on post-conviction review. *Hall* had been before the Florida courts on a post-conviction petition seeking the application of *Atkins*. It had been universally understood that *Atkins* was applicable retroactively so that the Florida courts were obliged to provide a mechanism to present an intellectual disability claim. See *Bies v. Bobby*, 556 U.S. 825 (2009); *State v. Lott,* 97 Ohio St. 3d 303 (2002). But the fact that one Supreme Court case is substantive and thus retroactive does not imply that every subsequent decision applying it is retroactive. *Moore I* also involved the retroactive application of *Atkins.*

The Decision discusses state court cases relied on by Elmore to show retroactivity of *Hall*. The Magistrate Judge distinguished those cases and instead relied on *In re Payne*, 722 Fed. App'x 534 (6th Cir. 2018), which held that *Hall* and *Moore I* are not to be applied retroactively. Elmore

claims *Payne* is abrogated by *Moore II*, but cites no case in which any court has reached that conclusion.

**Futility: The Statute of Limitations**

The Decision concluded that the proposed amendment was barred by the statute of limitations:

> Neither *Hall* nor *Moore I* was expressly made retroactive by the Supreme Court so as to qualify Elmore claims under those cases for a restart of the statute of limitations under 28 U.S.C.§ 2244(d)(1)(C).
>
> But even if they had been, Elmore's Motion to Amend would be untimely as to Claim XX. *Hall* was handed down May 27, 2014, so that claims based on *Hall* were required to be filed by May 27, 2015; the Motion to Amend was not filed until March 25, 2019, almost four years later. *Moore I* was decided March 28, 2017, so the Motion to Amend (assuming *Moore I* created a new right) was virtually a year late. The statute of limitations makes the Motion to Amend futile as to any claims under *Hall* or *Moore I* and the Motion to add those claims is denied on that basis as well.
>
> While Elmore argues that the Motion to Amend is timely because it was filed within one year of *Moore II*, no reasonable reading of that decision suggests it creates any new procedural, much less substantive, right.

(ECF No. 207, PageID 14792; typographical errors in original corrected).

Elmore objects that this ruling fails to consider numerous arguments he made on timeliness (Objections, ECF No. 212, PageID 14916).

First, Elmore objects that his Motion to Amend was filed within one year of *Moore II*. *Id.* at PageID 14898. He concedes that *Moore II* did not itself provide that it was retroactive, but then argues "he would have one year from that explicit declaration to file . . . ." *Id.* at 14898-99. By this logic, if the Supreme Court never made an explicit declaration of retroactivity, the statute

would never run. Elmore's counsel have created their own *reductio ad absurdum* construction of 28 U.S.C. § 2244(d)(1)(C).

Second, Elmore objects that the motion is timely under 28 U.S.C. § 2244(d)(1)(D) because it was presented within one year of discovering the factual predicate of the claim. He claims he was not able to discover the claim with due diligence until the Federal Defender was appointed in 2018 and Dr. Grant hired. (Objections, ECF No. 212, PageID 14899.) But Elmore's prior counsel, both experienced capital litigators, had access to the same funds under 18 U.S.C. § 3599 to hire an expert, if they had asked.

Third, Elmore claims, without any citation to authority except the bare text of the Suspension Clause that the statute is unconstitutional if applied here. Although it was an innovation when enacted by the AEDPA,[5] no court has held § 2244(d) unconstitutional because it suspends the writ.

Finally, Elmore claims that because he is intellectually disabled, he is ineligible for the death sentence and his execution would constitute a "fundamental miscarriage of justice." (Objections, ECF No. 212, PageID 14900, citing *Sawyer v. Whitley*, 505 U.S. 333 (1992), and *McQuiggin v. Perkins*, 569 U.S. 383 (2013)). *McQuiggin* held:

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S., at 329, 115 S.Ct. 851, 130 L.Ed.2d 808; see *House*, 547 U.S., at 538, 126 S.Ct. 2064, 165 L.Ed.2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the

---

[5] Prior to enactment of the AEDPA, there was no statute of limitations on habeas corpus claims. The only time limit was the requirement that the petitioner still be in custody.

> [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S., at 332, 115 S.Ct. 851, 130 L.Ed.2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin*, 569 U.S. at 386-87. *Sawyer* applied the "*Schlup* gateway" to the penalty portion of capital cases. Elmore's argument appears to be that Dr. Grant's assessment of Elmore's intellectual disability is new evidence that satisfies the gateway requirement.

Certainly Dr. Grant's evidence is "new" in the sense that it was never presented to the jury. However, given the fact that there was expert testimony by a qualified psychologist at trial that Elmore was not intellectually disabled, the Court cannot say that no rational juror could have found against Elmore on this issue.

5. Elmore claims he is entitled to equitable tolling of the statute, again relying on appointment of the Federal Public Defender in 2018 and their prompt hiring of Dr. Grant (Objections, ECF No. 212, PageID 14901). The Supreme Court has indeed held that equitable tolling can apply to the AEDPA statute of limitations. *Holland v. Florida*, 560 U.S. 631, 646 (2010). A petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S.Ct. 750, 755, 193 L.Ed.2d 652 (2016), quoting *Holland v. Florida*, 560, U.S. 631, 649 (2010); *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011), quoting *Holland*, 560 U.S. at 649. "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe*, 136 S.Ct. at 756, citing *Holland* (emphasis sic). "Equitable

tolling allows courts to review time-barred habeas petitions 'provided that a litigant's failure to meet a legally-mandated [sic] deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012), quoting *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011)..

Elmore cannot obtain equitable tolling here when he was represented throughout the time his case has been pending in federal court by two highly-qualified capital habeas practitioners prior to substitution of the Federal Public Defender..

**Futility:** *McCoy v. Louisiana*

The Decision also denied an amendment to convert his Claim 6.D from a claim of ineffective assistance of trial counsel under *Florida v. Nixon,* 543 U.S. 75 (2004), to a claim of client autonomy under *McCoy v. Louisiana*, 584 U.S. ___, 138 S.Ct. 1500 (2018), because *McCoy* is also not retroactively applicable to cases on collateral review.

Paralleling his argument about how *Moore I* is retroactive, Elmore argues that he "is part of a class of persons whose status is that of an uninformed defendant who did not agree to concede guilt, but who has still been subjected to punishment – when *McCoy* holds that no punishment is permitted for persons in that class[.]" (Objections, ECF No. 212, PageID 14924). By this logic, any new constitutional ruling by the Supreme Court would be substantive under *Teague* because it creates a new class as to whom a certain procedure has not been applied.

In the same paragraph, Elmore argues that *McCoy* is a "watershed rule of criminal procedure which applies retroactively." (Objections, ECF No. 212, PageID 14924). Counsel cites no caselaw in support of this argument, because there is none – the Supreme Court has never

12

classified a new procedural rule as "watershed" and has only suggested that a change as important as that effected by *Gideon v. Wainwright*, 372 U.S. 335 (1963). To put it succinctly, *McCoy* is no *Gideon*.

**Conclusion**

Having reconsidered the matter as required by the Recommittal Order, the Magistrate Judge recommends that Elmore's Objections be overruled.

October 18, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge
